JOSEPH W. AND JO ANN DOXEY, JR., Petitioners v. COMMISSION OF INTERNAL REVENUE, Respondent
DOXEY v. COMMISSION OF INTERNAL REVENUE
Docket No. 38143-87
United States Tax Court
T.C. Memo 1991-150; 1991 Tax Ct. Memo LEXIS 169; 61 T.C.M. (CCH) 2326; April 3, 1991, Filed *169 Decision will be entered under Rule 155. C. Jerre Lloyd, for the petitioners. Jose A. Bonau, for the respondent. RUWE, Judge. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1981
$ 16,640.18
$ 1,399.12
$ 988.91
50 percent of   the interest due
on $ 16,640.18   1982
18,007.45
--   925.37
50 percent of   the interest due
on $ 18.007.45   1983
10,912.33
--   545.62
50 percent of   the interest due
on $ 10,912.33   Year
Sec. 6661
1981
--    1982
$ 4,501.86
1983
2,728.08
After concessions by the parties, *170 the issues for decision are: (1) Whether petitioners are taxable on the interest income earned on certificates of deposit which were titled in the names of their children during the taxable years 1981 through 1983; (2) whether petitioners are liable for an addition to tax under section 6651(a)(1) for failure to timely file their income tax return for the taxable year 1981; (3) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of the rules and regulations for the taxable years 1981 through 1983; and (4) whether petitioners are liable for additions to tax under section 6661 for substantial understatement of income tax for the taxable years 1982 and 1983. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Joseph W. Doxey, Jr. and Jo Ann Doxey, husband and wife, resided in Cameron Parish, Louisiana, during the years in issue and when they filed their petition in this case. Petitioners filed joint Federal income tax returns. Petitioners have four children, Duncan H. Doxey (Duncan), Denine *171 Doxey (Denine), Joseph A. Doxey (Joey), and Walter Bryan Doxey (Bryan). The dates of birth and their ages during the taxable years in issue, are as follows: Ages
Name
Date of Birth
1981
1982
1983
Duncan
October 17, 1962
18
19
20
Denine
December 27, 1964
16
17
18
Joey
March 25, 1968
12
13
14
Bryan
December 26, 1969
11
12
13
During the 1970s and through the years in issue, petitioners owned and operated Doxey Marine Service, Inc. (DMS). DMS sold petroleum products, primarily diesel fuel and gasoline, to the marine industry. Petitioner Joseph W. Doxey, Jr. was also a wholesaler of petroleum products. During the years in issue, petitioners' children were full-time students enrolled in either local schools or college. Petitioners' children performed services for DMS. The services performed by the children occurred during the summers, weekends, school vacations, and after school. During the taxable years 1976 through 1979, DMS issued Forms W-2 to petitioners' children. The amounts reflected on the Forms W-2 and the ages of the children during each respective year are set forth below: Name
1976
Age
1977
Age
1978
Age
1979
Age
Duncan
$ 3,485.90
(13)
$ 3,924.79  (14)
$ 8,599.25
(15)
$ 8,068.25
(16)
Denine
3,033.50
(11)
3,326.85  (12)
8,174.75
(13)
6,645.50
(14)
Joey
1,323.00
(7)
(illegible)
(8)
6,369.50
(9)
4,376.00
(10)
Bryan
997.40
(6)
1,300.00  (7)
6,403.75
(8)
4,372.00
(9)
*172 During the years in issue, petitioners' children reported taxable income in the form of wages. The total wages reported on their income tax returns and their ages during each respective year are set forth below: Amounts of Wages Per Year
Name
1981
Age
1982
Age
1983
Age
Duncan
$ 2,385.00
(18)
$ 1,439.83
(19)
$ 719.39
(20)
Denine
2,350.00
(16)
--   (17)
--  (18)
Joey
2,541.90
(12)
--   (13)
--  (14)
Bryan
2,541.90
(11)
--   (12)
--  (13)
On their joint 1981, 1982, and 1983 Federal income tax returns, petitioners reported total income from all sources in the amounts of $ 22,968, $ 32,192, and $ 21,179, respectively. Petitioners reported no wages or dividend distributions from DMS during these years. In 1978, DMS executed eight notes payable to petitioners' children which totalled $ 50,047.99. These notes stated that they bore interest at the rate of 12 percent. Four of these notes were executed on October 4, 1978, and represent money transferred to DMS from savings accounts titled in the children's names. The other notes were executed on December 31, 1978, and were allegedly exchanged for wages due to the children from *173 DMS. The following is a summary of these notes and the source of the funds: Savings Account
Payee's
Withdrawals on
Name
10/4/78
Wages Due from DMS
Total
Duncan
[2] $ 6,174.73
$ 9,998.02
$ 16,172.75
Denine
[3] 5,034.73
9,836.82
14,871.55
Joey
[4] 3,781.73
6,970.42
10,752.15
Bryan
[5] 1,353.66
6,897.88
8,251.54
On January 8, 1980, DMS paid the October 4 and December 31, 1978, notes by issuing checks payable to each of petitioners' children in the following amounts: Name
Amount
Duncan Doxey
$ 16,173.00
Denine Doxey
14,872.00
Joseph Doxey
10,752.00
Bryan Doxey
8,252.00
Notations on these checks indicate that they were payments in full *174 satisfaction of the notes. During 1980, 1981, 1982, and 1983, petitioners purchased certificates of deposit (CDs) in the names of their children, with either one or both petitioners listed as the custodian. Most of the funds used to purchase these individual CDs were supplied by petitioners. Unsecured, interest-free, demand notes payable to petitioners were signed by the child listed as the owner of the CD. Other funds used to purchase CDs allegedly came from loans by petitioners' children to the child listed as the owner of the CD. The children who allegedly received such loans, executed unsecured, interest-free, demand notes payable to the other children. The remaining funds to purchase the CDs allegedly came from the child in whose name the CD was purchased. During the period October 15, 1980, through May 20, 1983, fifteen CDs were purchased in the names of petitioners' children. Fourteen of these CDs were in the amount of $ 100,000 and one was in the amount of $ 200,000. Appendix A lists chronologically the CDs and the alleged source of funds used to purchase them. Petitioner Jo Ann Doxey controlled the investments in the CDs. She decided when and where to purchase *175 a CD, the amount of the CD, in whose name the CD would be purchased, the source of funds to purchase the CD, and the terms of the notes which were executed. Interest earned on the CDs during the years at issue was reported on the Federal income tax returns of the children as follows: Name
1981
1982
1983
Duncan
$  4,888.89
$  9,150.43
$  7,299.52
Denine
10,872.81
10,205.41
8,137.50
Joey
10,295.15
9,328.83
8,558.33
Bryan
9,305.41
10,458.80
8,138.48
Total
$ 35,362.26
$ 39,143.47
$ 32,133.83
It is these amounts that respondent has determined are taxable income to petitioners. Petitioners' joint 1981 Federal income tax return was filed on June 1, 1982. No extension for filing was requested or granted. OPINION The first issue for decision is whether petitioners are taxable on interest income earned on the certificates of deposit titled in the names of their children. Resolution of this issue turns on who is the owner of the income-producing property. The owner of property for Federal income tax purposes is a question of fact to be determined from an examination of all the facts and circumstances. Schoenberg v. Commissioner, 302 F.2d 416, 419 (8th Cir. 1962), *176 affg. a Memorandum Opinion of this Court; Hang v. Commissioner, 95 T.C. 74, 80 (1990); Snyder v. Commissioner, 66 T.C. 785, 790-791 (1976). In determining the identity of the owner of the property, we look to beneficial ownership as opposed to mere legal title. Serianni v. Commissioner, 80 T.C. 1090, 1104 (1983), affd. 765 F.2d 1051 (11 Cir. 1985); Hook v. Commissioner, 58 T.C. 267, 273, 276 (1972). It is command over the property or the enjoyment of its economic benefits that marks the real owner. q Hang v. Commissioner, supra at 80. The substance of the transaction, rather than its form, is determinative of its tax consequences. Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 266, 2 L. Ed. 2d 743, 78 S. Ct. 691 (1958); Commissioner v. Court Holding Co., 324 U.S. 331, 89 L. Ed. 981, 65 S. Ct. 707 (1945). [6] Petitioners have the burden of proving that respondent's determination is incorrect. Rule 142(a). *177 Two rules of construction are pertinent to our resolution. First, the broad sweep of section 61 indicates the purpose of Congress to use the full measure of its taxing powers, and our construction of the statute should be consonant with that purpose. Helvering v. Clifford, 309 U.S. 331, 334, 84 L. Ed. 788, 60 S. Ct. 554 (1940). Second, when the transactions are between family members, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more. Helvering v. Clifford, supra at 335. During the years in issue, CDs with a total face value of $ 1,600,000 were purchased in the names of petitioners' children. Of this $ 1,600,000, $ 1,226,281.17, or 77 percent, was admittedly supplied by petitioners from funds belonging to them. Petitioners allege that they loaned these amounts, on an unsecured, interest-free, demand basis, to the children in whose name the particular CD was purchased. Jo Ann Doxey was in charge of making decisions regarding the purchase of the CDs. She decided in whose name the CD would be purchased and where the money would come from. She also controlled the disposition of the proceeds *178 from matured CDs. Petitioners do not deny this, but argue that their actions and decisions in this regard were as agents or custodians for the benefit of their children, that the children were the true beneficial owners of the CDs, and that the interest earned on the CDs was used by the children to pay for their respective educations. Petitioners and three of their children testified that the interest earned on the CDs was used for the benefit of the children by providing money for their education. We found this testimony vague and lacking in specificity. We are not bound to accept the self-serving testimony of interested witnesses and this is especially true where other evidence renders the testimony unbelievable. Davis v. Commissioner, 88 T.C. 122, 142-143 (1987), affd. 866 F.2d 852 (6th Cir. 1989). Petitioners apparently kept no records reflecting the disposition of the interest earned on the CDs. They failed to produce testimony or documents that trace interest earned on a particular CD into an account held for the benefit of the child in whose name the CD was purchased or for specific expenditures for such a child. Petitioners felt *179 free to take funds that ostensibly belonged to one child and use those funds to purchase CDs in another child's name. The movement of funds allegedly belonging to one child into a CD in another child's name was accompanied by interest-free demand notes from one child to the other. We find it highly irregular that an agent or fiduciary would lend funds belonging to a beneficiary on an interest-free basis. Even though all of the children allegedly made such loans to each other, petitioners presented no evidence that the amounts and duration of the respective loans resulted in equalizing the economic results of these loans. It appears that petitioners retained total discretion as to how funds allegedly belonging to their children could be used. Petitioners argue that the use of interest-free demand loans to shift income from a lender in a higher income tax bracket to a borrower in a lower income tax bracket was sanctioned by the Supreme Court in Dickman v. Commissioner, 465 U.S. 330, 79 L. Ed. 2d 343, 104 S. Ct. 1086 (1984). Dickman dealt with the applicability of the gift tax to interest-free loans and did not decide the income tax ramifications of such loans. Dickman does contain language *180 concerning potential income tax benefits that might be achieved by a taxpayer in a high-income tax bracket who makes an interest-free loan to a person in a lower bracket. Dickman v. Commissioner, supra at 339. [7] Of course, the Supreme Court was discussing a bona fide loan where the borrower had the beneficial use of the borrowed funds and was entitled to any earnings produced therefrom and not a situation where there was no substance to the purported loan. Petitioners argue that even if we find that their purported loans were not bona fide, they should not be taxable on the interest income attributable to funds which their children purportedly loaned to each other on an unsecured, interest-free, demand basis. They make the same argument regarding interest earned on funds purportedly supplied by the child in whose name the CD was purchased. Petitioners claim that *181 funds allegedly supplied by the children came primarily from past wages which the children earned working for DMS. [8] We believe that the evidence surrounding the children's wages is supportive of respondent's conclusion that petitioners retained beneficial ownership of funds held in their children's names. The first two CDs were purchased on October 18, 1980, each in the amount of $ 100,000. Petitioners provided $ 171,477.25 of the combined purchase prices and their children purportedly provided the remaining $ 28,522.75. On November 5, 1980, another CD was purchased. Petitioner Joseph W. Doxey supplied $ 25,276.60 and petitioners' children purportedly supplied the remaining $ 74,723.40. Thus, in the fall of 1980, petitioners' children, then ages 10 through 17, purportedly had $ 103,246.15 of their own funds *182 available to invest in CDs. The amounts purportedly contributed by each child are as follows: Duncan
(Age 17)
$ 26,522.69
Denine
(Age 15)
25,471.67
Joey
(Age 11)
17,580.32
Bryan
(Age 10)
16,837.79
Joey and Bryan (jointly)
7,103.48
Duncan, Denine, and Joey (jointly)
9,730.20
Petitioner Jo Ann Doxey testified that $ 50,047.99 of the money paid for the CD purchased on November 5, 1980, came from repayments by DMS of amounts that the children had "loaned" to DMS in 1978. She testified that the funds making up these purported loans to DMS in 1978 were from two sources. One source was wages which the children purportedly had earned from DMS prior to 1979 and which had not been paid to them during the years in which they were allegedly earned. These "wage loans" were evidenced by notes dated December 31, 1978. In addition to "lending" their wages to DMS, petitioners' children also purportedly lent DMS amounts withdrawn from savings accounts in their names. On October 4, 1978, the total amount in each of the children's savings accounts was withdrawn. These withdrawals correspond with notes dated October 4, 1978 from DMS to the children. The total principal *183 amount of the October 4 and December 31 notes is $ 50,047.99. The notes indicate that they are to bear interest at a rate of 12 percent. On January 8, 1980, DMS issued checks payable to each of the children in the principal amount of these notes. The total amount of these checks was $ 50,047.99. [9] The checks indicate that they constitute full satisfaction of the notes despite the fact that no amount was included for interest. We have several observations regarding this scenario. First, the amount of wages allegedly earned by petitioners' children from DMS seems unrealistic in light of their ages and their status as full-time students. Second, the fact that DMS "borrowed" the children's wages, "borrowed" all of the money in the children's savings accounts, and then apparently failed to pay interest on *184 these "loans," supports a conclusion that petitioners retained beneficial ownership over amounts listed in the names of their children. Third, even if we were to accept petitioners' argument that money used to purchase a CD on November 5, 1980, came from wages and savings belonging to their children, the amount of alleged wages and savings ($ 50,047.99) "borrowed" by DMS, fails to account for the additional $ 53,198.16 alleged to have been provided by the children during the fall of 1980. [10] *185 (See Appendix A.) Likewise, there is no explanation of the source of funds that the children allegedly loaned to each other in 1981, 1982, and 1983. Alleged earnings from DMS, even if combined with interest earned on the CDs, would not have provided the children with funds sufficient to account for the amounts which they allegedly supplied to purchase the CDs. (See Appendix A.) [11] We are unconvinced by petitioners' explanation that their children had sufficient separate financial resources to have provided for the substantial amounts which they allegedly supplied for CD purchases in 1980 or subsequent years. Other indications that petitioners exercised beneficial control over funds in their children's names include evidence of checks drawn on the children's checking accounts to pay for family groceries and petitioners' credit card bills. Checks were drawn on Bryan's and Joey's accounts payable to General Motors Acceptance Corporation. Bryan testified that these checks, written when he was age 11, were used to pay for either his brother's or sister's car. Bryan testified that the payments were gifts, and that his parents requested that he make these *186 gifts. However, Denine testified that these payments were for a car that her father had purchased in his name and which she used. She testified that the car payments that her brothers made were loans, that her brothers always expected to be repaid, and that she repaid them. We are unconvinced that petitioners relinquished beneficial ownership and control over the amounts they purportedly loaned to the children. We are also unconvinced that the children were the beneficial owners of other funds which were used to purchase the CDs. The totality of the evidence is consistent with respondent's determination that petitioners retained dominion and control over the CDs which they purchased in their children's names. Petitioners have failed to meet their burden of proving that respondent's determination is incorrect. The second and third issues for decision are whether petitioners are liable for additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a)(1) and (2) for the taxable years 1981 through 1983; and whether petitioners are liable for failing to timely file a Federal income tax return for the taxable year 1981 under section 6651(a)(1). *187 Petitioners have not met their burden of proving that they are not liable for these additions to tax. Petitioners failed to address these issues at trial or on brief and appear to have abandoned these issues. Accordingly, we hold for respondent. See Burbage v. Commissioner, 82 T.C. 546, 547 (1984), affd. 774 F.2d 644 (4th Cir. 1985); Rockwell International Corp. v. Commissioner, 77 T.C. 780, 837 (1981), affd. 694 F.2d 60 (3d Cir. 1982). The final issue for decision is whether petitioners are liable for additions to tax for substantial understatement of income tax under section 6661 for the taxable years 1982 and 1983. This addition to tax does not apply to any portion of the understatement attributable to the taxpayer's treatment of an item if there were substantial authority for such treatment. Petitioners argue that they had substantial authority for not reporting the interest income on their Federal income tax returns. In evaluating whether a taxpayer's position that the treatment of a particular item is supported by substantial authority, the weight of authorities in support of the taxpayer's position *188 must be substantial in relation to the weight of authorities supporting contrary positions. Sec. 1.6661-3(b)(1), Income Tax Regs.; Antonides v. Commissioner, 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Petitioners cite Dickman v. Commissioner, 465 U.S. 330, 79 L. Ed. 2d 343, 104 S. Ct. 1086 (1984), as substantial authority for their position that they are not liable for income tax on interest from CDs titled in their children's name which petitioners allege were purchased with the proceeds of interest-free loans. As previously stated, petitioners' reliance on Dickman is misplaced. The only issue presented by this case is who was the beneficial owner of the CDs in question. Nothing in Dickman suggests that the beneficial owner of an investment could escape tax by placing the investment in the name of his or her children. Accordingly, we sustain the imposition of the section 6661 addition to tax. Decision will be entered under Rule 155.
APPENDIX A 1. Listed Owner: Duncan H. Doxey Financial Institution: Lakeside National Bank
Purchase Date: October 15, 1980
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to J.W. Doxey,
$  62,815.22
Note payable to Jo Ann Doxey
26,000.00
Note payable to Joey and Bryan Doxey
7,103.48
Note payable to Joey Doxey
918.85
Note payable to Bryan Doxey
1,354.45
Note payable to Denine Doxey
1,808.00
Total
$100,000.00
*189 2. Listed Owner: Denine Doxey Financial Institution: First Federal Savings and Loan Association Purchase Date: October 15, 1980
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to J.W. Doxey, Jr.
$  60,806.48
Note payable to Bryan Doxey
3,036.02
Note payable to Joey Doxey
1,510.27
Note payable to Jo Ann Doxey
21,855.55
Note payable to Duncan
1,525.74
Note payable to Duncan, Denine, and Joey Doxey
9,730.20
Denine's Money
1,535.74
Total
$100,000.00
3. Listed Owner: Joseph A. Doxey (Joey) and Walter Bryan Doxey (Bryan) Financial Institution: Lakeside National Bank
Purchase Date: November 5, 1980
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to Joey
$  15,151.20
Note payable to Denine
22,127.93
Note payable to Bryan
12,447.32
Note payable to J.W. Doxey, Jr.
25,276.60
Note payable to Duncan
24,996.95
Total
$100,000.00
4. Listed Owner: Joey & Bryan Doxey Financial Institution: Unknown Purchase Date: April 16, 1981
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to J.W. Doxey, Jr.
$  74,000.00
Note payable to Jo Ann Doxey
26,000.00
Total
$100,000.00
*190 5. Listed Owner: Bryan Doxey & Duncan H. Doxey Financial Institution: Unknown Purchase Date: May 18, 1981
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to J.W. Doxey, Jr.
$  74,000.00
Note payable to Jo Ann Doxey
26,000.00
Total
$100,000.00
6. Listed Owner: Duncan Doxey Financial Institution: Unknown Purchase Date: April 21, 1982
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to Jo Ann Doxey
$  21,859.55
Note payable to Bryan Doxey
3,036.02
Note payable to Joey Doxey
1,510.27
Note payable to J.W. Doxey, Jr.
60,806.48
Note payable to Denine Doxey
1,525.74
Note payable to Duncan, Joey, and Denine
9,736.20
Duncan's Money
1,525.74
Total
$100,000.00
7. Listed Owner: Denine Doxey Financial Institution: Texas Commerce Bank Purchase Date: May 11, 1982
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to J.W. Doxey, Jr.
$  74,000.00
Note payable to Jo Ann Doxey
26,000.00
Total
$100,000.00
8. Listed Owner: Joseph A. Doxey (Joey) Financial Institution: Texas Commerce Bank Purchase Date: May 11, 1982
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to Duncan
$  24,996.95
Note payable to J.W. Doxey, Jr.
25,276.60
Note payable to Denine
22,127.93
Note payable to Bryan
12,447.32
Joey's Money
15,151.20
Total
$100,000.00
*191 9. Listed Owner: Joey Doxey Financial Institution: Unknown Purchase Date: May 28, 1982
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to Jo Ann Doxey
$  21,859.55
Note payable to J.W. Doxey, Jr.
60,806.48
Note payable to Duncan, Denine, and Joey Doxey
9,736.20
Note payable to Bryan
3,036.02
Note payable to Denine
1,525.74
Note payable to Duncan
1,525.74
Joey's Money
1,510.27
Total
$100,000.00
10. Listed Owner: Joey Doxey Financial Institution: Unknown Purchase Date: June 14, 1982
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to J.W. Doxey, Jr.
$  74,000.00
Note payable to Jo Ann R. Doxey
26,000.00
Total
$100,000.00
11. Listed Owner: Denine Doxey Financial Institution: Texas Commerce Bank Purchase Date: June 28, 1982
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to J.W. Doxey, Jr.
$  60,806.48
Note payable to Duncan
1,525.74
Note payable to Joey Doxey
1,510.27
Note payable to Bryan Doxey
3,036.02
Note payable to Duncan, Denine, and Joey
9,736.20
Note payable to Jo Ann Doxey
21,859.55
Denine's Money
1,525.74
Total
$100,000.00
12. *192 Listed Owner: Bryan Doxey Financial Institution: Texas Commerce Bank Purchase Date: July 14, 1982
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to J.W. Doxey, Jr.
$  74,000.00
Note payable to Jo Ann R. Doxey
26,000.00
Total
$100,000.00
13. Listed Owner: Duncan Doxey Financial Institution: Texas Commerce Bank Purchase Date: January 3, 1983
Denomination: $ 200,000.00 Alleged Source of Funds
Amount
Note payable to Bryan
$  18,983.34
Note payable to Jo Ann
21,859.55
Note payable to Denine
23,653.67
Note payable to Duncan, Denine & Joey Doxey
9,736.20
Note payable to Joey
20,161.47
Note payable to J.W. Doxey, Jr.
79,093.08
Duncan's Money
26,512.69
Total
$200,000.00
12. Listed Owner: Bryan Doxey Financial Institution: Unknown Purchase Date: May 20, 1983
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to J.W. Doxey, Jr.
$  74,000.00
Note payable to Jo Ann R. Doxey
26,000.00
Total
$100,000.00
15. Listed Owner: Bryan Doxey Financial Institution: Unknown Purchase Date: May 20, 1983
Denomination: $ 100,000.00 Alleged Source of Funds
Amount
Note payable to Joey Doxey
$  12,000.00
Note payable to J.W. Doxey, Jr. and
Jo Ann Doxey
11,000.00
Note payable to J.W. Doxey, Jr.
44,300.00
Note payable to Denine Doxey
15,800.00
Bryan's Money
16,900.00
Total
$100,000.00
*193 Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The owner of the savings account was shown as Duncan or Jo Ann Doxey.↩
3. The owner of the savings account was shown as Duncan or Jo Ann Doxey.↩
4. The owner of the savings account was shown as Joseph Doxey or Jo Ann Doxey (custodian).↩
5. The owner of the savings account was shown as Walter B. Doxey or Mr. and Mrs. J.W. Doxey, Jr.↩
6. See also Simon v. Commissioner, T.C. Memo 1981-198↩.
7. Section 7872 provides for the income tax treatment of interest-free loans with respect to loans made after October 11, 1985.↩
8. There was also testimony which alluded to a $ 5,000 gift from petitioners to their children. We find this testimony to be unclear and can discern no nexus between the alleged $ 5,000 gift and the CDs.↩
9. There is no explanation for what happened to the proceeds of the DMS checks between the time of payment on January 8, 1980, and the time these proceeds were allegedly used to purchase a CD on November 5, 1980.↩
10. The Forms W-2 which DMS issued to the children for 1979, reflect total wages of $ 23,461.76 before deductions for taxes withheld. We cannot tell from the record if or when these wages were paid. There is no evidence regarding the amount of wages, if any, paid in 1980.↩
11. The children purportedly supplied funds for the purchase of CDs during the years 1980 through 1983 in the following amounts: Name
Amount
Duncan
$82,609.55
Denine
91,630.49
Joey
69,423.80
Bryan
74,276.49
These total amounts do not include the amounts that the children jointly loaned to each other. We note that some of the CDs purchased in 1981, 1982, and 1983, might represent the reinvestment of amounts from maturing CDs, but that is not clear. Petitioner Jo Ann Doxey testified to only one "roll-over" of funds from one CD to another.↩